UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DEMINTER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 15-cv-05735 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 4; Consent to Proceed Before a United States Magistrate Judge, Dkt. 5). This matter has been fully briefed (*see* Dkt. 9, 11, 12).

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical evidence regarding plaintiff's sleep apnea. Although plaintiff was diagnosed with severe obstructive sleep apnea based on specific objective

findings during a sleep study, the ALJ concluded that plaintiff's sleep apnea is not a severe impairment. This conclusion was based in part on the erroneous assumption that the amount of total hours spent asleep is the relevant factor when evaluating sleep apnea and its resultant effects. This conclusion by the ALJ about plaintiff's sleep apnea also was based on a finding regarding plaintiff's lack of problems with sleep that is not supported by substantial evidence in the record as a whole.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, MICHAEL DEMINTER, was born in 1943 and was 59 years old on the alleged date of disability onset of April 15, 2003 (*see* AR. 1106-12). Plaintiff graduated from high school and earned an associate's degree in Business Management (AR. 1086). Plaintiff served for twenty-one years in the Navy (*id.*) and then worked as a logistician manager for twenty-one years before he was terminated when the business sold (AR. 1087-88). He last worked in an office for Disabled American Veterans, but was terminated and does not know why (AR. 1092-93).

According to the ALJ, "through the date last insured, the claimant had the following severe impairments: degenerative joint disease of the bilateral knees and hips, status post right hip and left knee replacements; degenerative disc disease of the cervical and lumbar spines; atrial fibrillation; and obesity (20 CFR 404.1520(c))" (AR. 973.)

At the time of the last hearing, plaintiff was living in his home with his wife (AR. 991).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 57, 58). After a written decision denying plaintiff's claim, and following a reversal and remand of that decision from this Court (AR. 1032-48), plaintiff's second requested hearing was held before Administrative Law Judge Wayne N. Araki ("the ALJ") on May 14, 2015 (*see* AR. 987-1001). On July 31, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 968-86).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) The ALJ erred in disregarding the impact of plaintiff's sleep apnea and the side effects of his medications on his functioning; (2) The ALJ erred in rejecting the Department of Veteran's Affairs disability determination; (3) The ALJ erred in finding plaintiff not fully credible; and (4) The ALJ erred in rejecting the lay witness evidence (*see* Dkt. 9, p. 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1)   Did the ALJ err in disregarding the impact of plaintiff's sleep apnea and the side effects of his medications on his functioning?**

a.  Sleep apnea

Plaintiff contends that the ALJ erred by concluding that plaintiff's sleep apnea was not a severe impairment (AR. 973, 977). Regarding the ALJ's prior written decision, this Court previously had held that the ALJ erred by apparently relying on speculation when analyzing plaintiff's sleep apnea (*see* AR. 1039). Plaintiff argues that the ALJ again erred when evaluating plaintiff's sleep apnea by basing his findings "on his lay interpretation of the evidence," and notes that the ALJ did not ask plaintiff any questions about his sleep apnea at the second administrative hearing, and did not call on a qualified medical expert (*see* Dkt. 9, pp. 4-5). Defendant contends that there is no error.

Step-two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's

physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p).

Plaintiff underwent a sleep study in July, 2006 (AR. 375). Plaintiff subsequently underwent a second sleep study, in August 2006, because the "CPAP was ineffective" and not sufficient to address symptoms (AR. 373). During this subsequent sleep study, plaintiff's "sleep architecture was abnormal for sleep fragmentation and reduced amount of REM and slow wave sleep," even though he fell asleep quickly and entered REM sleep quickly (AR. 372). Plaintiff spent 43.9% of his sleep time in stage one sleep, when a normal amount of time is 10%, but spent only 4.8 percent of his time in stages 3 and 4 and REM sleep combined, when normal would be about 30-50% of sleep spent in these stages (*see* AR. 372). The doctor opined that plaintiff suffered from "reduced sleep efficiency with increase in the number of arousals and awakenings partly due to the residual respiratory events" (AR. 373). He recommended using a BiPAP and weight loss (*id.*). Plaintiff reported an inability to use the BiPAP due to nasal irritation initially in November, 2006 (AR. 353 ("UNABLE TO TOLERATE BIPAP MACHINE DUE TO NASAL IRRITATION")), and later in May 2008 and August 2009 (AR. 306 ("not using masks since causes nasal irritation, sneezing"), 965 ("sleep apnea [] is uncontrolled due to no tolerance for the mask")). Although the ALJ noted that plaintiff found something that worked for his nasal congestion, plaintiff's congestion not only came back, but also does not appear to be the only problem plaintiff was having with the mask, as, for example, in May 2008 plaintiff indicated that the mask caused nasal irritation and sneezing (*see, e.g.,* AR. 306).

The ALJ failed to find that plaintiff's sleep apnea was a severe impairment because despite not using the mask, "there is no indication of significant and ongoing problems sleeping through the date last insured and he was admittedly sleeping eight to nine hours a night in early-2009" (AR. 977). Plaintiff argues that the "ALJ failed to note, however, that plaintiff's complete statement clarified that he was tired all the time despite his sleep" (*see* Dkt. 9, p. 4 (*citing* AR. 142)).

Plaintiff's argument is persuasive. In the same sentence that plaintiff indicated that he sleeps 8-9 hours a night, plaintiff indicated "I am tired all the time, even though I sleep 8-9 hours a night" (AR. 142). Substantiating plaintiff allegation are plaintiff's objective results from his sleep study. It is clear that the issue when plaintiff was diagnosed with severe obstructive sleep apnea was not the amount of time that plaintiff spent asleep, but the efficiency of plaintiff's sleep and the fact that he spent 43.9% of his sleep time in stage one sleep, when a normal amount of time is 10%, but spent only 4.8 percent of his time in stages 3 and 4 and REM sleep combined, when normal would be about 30-50% of sleep spent in these stages (*see* AR. 372). The doctor opined that plaintiff suffered from severe obstructive sleep apnea and "reduced sleep efficiency with increase in the number of arousals and awakenings partly due to the residual respiratory events" (AR. 373). Although plaintiff was asleep for his sleep study for 326 minutes, his sleep efficiency was 78.4%; and he spent 143 minutes in stage 1 sleep, while only spending 12 minutes in REM sleep and 3.5 minutes in stage 3/4 sleep (AR. 372). It is clear from the objective medical results, and from the medical doctor's opinion interpreting them, that the amount

of hours spent asleep is not determinative regarding the severity of, or limitations from, his sleep apnea.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that plaintiff "was admittedly sleeping eight to nine hours a night in early-2009" is not a legitimate reason for the failure to find that plaintiff's alleged sleep apnea is a severe impairment and to include relevant limitations, such as fatigue and drowsiness, into plaintiff's residual functional capacity ("RFC") (AR. 977). The doctor's opinion and the sleep study demonstrate that the amount of hours plaintiff spends asleep is not the relevant factor regarding whether or not plaintiff's sleep apnea is severe and if it is associated with relevant limitations.

The other reason offered by the ALJ for his failure to find plaintiff's sleep apnea to be a severe impairment is the finding that "there is no indication of significant and ongoing problems sleeping through the date last insured" (January 1, 2005 – June 30, 2008) (AR. 977). However, the Court concludes that this finding is not based on substantial evidence in the record as a whole.

On May 15, 2006, the reason for plaintiff's medical appointment was "sleeping problem [for] two [months]" (AR. 406 (also reporting a "cold, runny nose in the warm weather")). At this time, plaintiff reported that he was waking up 3 to 4 times per night (AR. 407). On October 3, 2006, plaintiff's chief complaint was sleep apnea (AR. 360). At this time, plaintiff reported daytime drowsiness and fatigue (*see id.*). On August 19, 2008, plaintiff's problems reported to the doctor included insomnia, drowsiness, and obstructive sleep apnea (AR. 290; *see also* AR. 287 (September 3, 2008 (same)); AR. 283 (October,

2008 (same)). On January 19, 2009, plaintiff reported that he sleeps on and off for 6 to 7 hours a night (AR. 161). On March 26, 2009, plaintiff reported that he gets about 3 to 4 hours of sleep at night, and then he has "short bursts of sleep the rest of the night; [and that] [his] sleep is not relaxing" (AR. 178). On August 17, 2009, plaintiff reported that his sleep apnea still was "uncontrolled" (AR. 965).

Based on the record as a whole, the Court concludes that the ALJ's finding that "there is no indication of significant and ongoing problems sleeping through the date last insured" is not based on substantial evidence in the record as a whole (AR. 977). The ALJ does not point to any evidence in the record to support this finding, and does not cite a single medical appointment at which plaintiff reported that he was not having any sleep problems during the relevant period of time. Although the ALJ referred to a treatment note when plaintiff indicated that he was feeling fine, this note is from July, 2009, almost a year outside of the relevant period of time for the disability application, and also, this note appears to be in reference to whether or not plaintiff was suffering from an infection, as it is followed by "no fever and no chills," despite plaintiff's report of watery eyes and nasal drip (AR. 965).

The Court also concludes that the ALJ's error when failing to find that plaintiff's sleep apnea is a severe impairment is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in

*Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, the ALJ failed to credit fully plaintiff's alleged symptoms of fatigue and drowsiness when determining plaintiff's residual functional capacity ("RFC") (AR. 974). Plaintiff argues that these symptoms of his sleep apnea would impact significantly his ability to remember, concentrate, and persist on basic tasks (Dkt. 9, p. 8). Plaintiff also contends that his symptoms would prevent him from being able to engage in his past relevant work as a logistics engineer on a regular and continuing basis (*id.* at pp. 8-9).

The Court cannot conclude with confidence that no reasonable ALJ when fully crediting plaintiff's alleged severe impairment of sleep apnea, and its resultant fatigue and drowsiness, "'could have reached a different disability determination.'" *Marsh*, *supra*, 792 F.3d at 1173 (*citing Stout,* 454 F.3d at 1055-56). Therefore, the Court concludes that the ALJ's error with respect to the evaluation of plaintiff sleep apnea is not harmless.

      b.  Medication side effects

Plaintiff contends that the ALJ erred when he found that plaintiff's allegations of "incapacitating" side effects from his medications were not corroborated by medical records, in part because plaintiff did not contend that the side effects were incapacitating (*see* AR. 977). However, plaintiff does contend that the side effects from his medications "compounded the effects of [the sleep apnea] by adding to the tiredness that he felt" (Dkt. 9, p. 4). Because this Court concludes that the ALJ should evaluate anew plaintiff's sleep apnea following remand of this matter, the Court also concludes that plaintiff's side effects from his medications should be part of this new analysis following remand. The Court finds persuasive plaintiff's argument that simply because plaintiff's doctors altered plaintiff's prescriptions in order to accommodate plaintiff's side effects of drowsiness and fatigue does not mean that no side effects exist or that drowsiness and fatigue do not need to be considered as part of plaintiff's RFC.

    (2)    **Did the ALJ err in rejecting the Department of Veteran's Affairs disability determination?**

Although plaintiff contends that the ALJ erred when evaluating the VA's disability determination, the Court does not agree. Here, the ALJ provided persuasive, specific, valid reasons for failing to credit fully the disability determination by the VA.

According to the Ninth Circuit, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted).

Among other reasons, the ALJ failed to give full weight to the VA's disability determinations because they "are inconsistent with the claimant's longitudinal treatment history, the objective clinical findings, and his performance on physical examinations set forth above" (AR. 978). The ALJ provided a specific example noting that although plaintiff "alleged that he was in constant pain" when reporting to the VA, during the subsequent period of time relevant for the disability application, plaintiff indicated that his pain was controlled adequately "through and well after the date last insured" (*see id.*). The ALJ's reasoning on this issue is persuasive, specific, and valid. *See McCartey*, *supra,* 298 F.3d at 1076.

The ALJ's reasoning also is supported by substantial evidence in the record as a whole. On April 29, 2004 Dr. Paul Nuccio, M.D. examined plaintiff for the VA and noted that plaintiff indicated that his pain frequency was "All the time" (AR. 3666). However, as noted by the ALJ, during the relevant period of time for his Social Security disability application, on May 18, 2007, plaintiff reported that his pain scale was zero and that he was "Pain Free," although the Court notes that this pain free status was accompanied by active prescriptions, including Tylenol with codeine (AR. 332, 333; *see also* AR. 406 (on May 15, 2006 plaintiff reported that his pain scale was zero and that he was "Pain Free"); AR. 287 (on September 3, 2008, plaintiff reported that his pain scale was zero and that he was "Pain Free")).

Based on the record as a whole, Court concludes that the ALJ provided persuasive, specific, and valid rationale for failing to credit fully the disability determination by the VA. *See McCartey*, *supra,* 298 F.3d at 1076.

(3) **Did the ALJ err in finding plaintiff not fully credible?**

Although the ALJ noted some apparent inconsistencies between plaintiff's allegations and his activities of daily living, the Court already has concluded that the ALJ erred when evaluating the medical evidence and that this matter should be reversed and remanded for further proceedings, *see supra* (*see also* AR. 142, 503 (trip to the Philippines); Dkt. 11, pp. 9-10 (*citing* AR. 159-67, 978) (daily visit to his wife's shop)). Because a determination of a claimant's credibility relies in part on the assessment of the medical evidence, *see* 20 C.F.R. § 404.1529(c), plaintiff's credibility should be assessed anew following remand of this matter. Similarly, because the ALJ relied on the same rationale when failing to credit fully the lay witness evidence as for plaintiff's credibility, this evidence, too, should be evaluated anew following remand of this matter.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 23rd day of March, 2016.

J. Richard Creatura
United States Magistrate Judge